Our first case for the day is Jackson v. Attorney General, No. 16, 2-1-2-1. Good morning. I'm Joseph Archie, and I'm appearing on behalf of Paul Eccleston Jackson. He is the plaintiff in the district court and the appellant here. With your permission, I'd like to reserve three minutes. That'd be granted. Thank you. May it please the court. The issue on appeal is whether Mr. Jackson's lawsuit is barred by Section 1503A1. And more specifically, the legal question is whether that provision bars a lawsuit that is based on an N-600 application that was filed after the plaintiff's removal proceeding had ended. And an N-600 application that is supported by evidence and information that was not used in the removal proceeding. But I guess your friend across the aisle would say, hey, you brought it up in the removal proceedings. Granted, it was brushed aside, but it was raised then. Maybe you should deal with that. It was raised in the first removal proceeding that occurred in 1992. As far as I can tell from the record, it was not raised subsequently, and it was not raised in the 2012. Well, that's an interesting point. I mean, shouldn't he have raised it somewhere else? I mean, he's a pretty frequent litigator before the agency. He brought it up once, never brought it up again. I mean, is there some sort of waiver argument maybe that could be made? Well, it would have been a lot easier if he had raised it in a different way. As I said, he did raise it in the 1992 proceeding. And it was, as far as we can tell from the record as it stands right now, it was basically ignored. And as a consequence of that, he didn't raise it anymore because he basically thought there was something wrong with it. I mean, think about it. This is a fellow who is a person who dropped out of high school in the 10th grade. He has no resources. He ends up in probably an intimidating situation in an immigration court. And by this time, remember that he is an orphan, although he's in his early 20s. But my point is, though, that he brought it up, and it was brushed aside, whether that was right or wrong. But, I mean, when we're dealing with lawyers, wouldn't we call that waiver? I mean, that he decided, hey, I'm not going to bring this up for a year, decades, and then I'm going to resurrect this argument and try to press it again? Well, as I say, it would have been a lot easier if he had pursued it. He was acting pro se, as you can imagine. He's been involved in a lot of immigration proceedings, and he has always been pro se. He hasn't had legal counsel until very recently. Let me ask you, from a practical perspective, if we were to determine that there's no jurisdiction here, your client still has ad lib relief by way of Section 1252, is that right? We do. So what's the practicality of what we're dealing with here? Yeah, well, I'm not sure that the mere existence of that case affects the jurisdiction issue under 1503A. I get that. But hypothetically, if we found no jurisdiction, what would happen in a parallel case? All right, I can tell you that. You may know that for a time that was the active case, and this case was on hold. And during that time, in the spring and summer of this year, the parties actually worked closely together in good faith, which we very much appreciated, to narrow the issues in that case and try to streamline it and make it as easy as possible going forward. And we got to the point where both sides agreed that there was a genuine issue of material fact as to Mr. Jackson's citizenship, and therefore it warranted a transfer under 1252B to a district court. And we were at the point of actually presenting an unopposed motion to the court, which we did. The motion was agreed to. As I say, both sides agreed, even the government agreed, that there was a genuine issue of material fact on the citizenship claim, and therefore both sides agreed that a transfer to the district court was warranted. So that's ready to go. That case is ready to go. That case is ready to go. That motion was submitted to the court, and it was at that point that this court, through a motions panel, indicated to us that it had some sort of concern. It did not identify what the concern was, but it had some sort of concern about that case. And at that point, the court directed both sides to leave that case aside and return to this one. Now, as you can imagine, the point of both of those cases is to get Mr. Jackson a hearing, and he doesn't much care whether he gets the hearing under 1503 or under 1252B. We were very happy to work toward the hearing. And that case is back in this court. That case is in this court. That case is pending here. So if we say no 1503, you can switch back to 1252. I believe we can. And, in fact, as I say, the court did not tell us exactly what the issue was. But if for some reason in dealing with this case the court wants to have that issue briefed or whatever, we would be happy to brief it, and perhaps we can satisfy whatever concern there was in that case. This is no matter which avenue you go down. We still have a factual question here of paternity. You have a factual question. Exactly. So how are we going to determine that either in this case or the other case? A trial court determines it. Okay. Under 1252. But we have the 1252 case. Absolutely. Under 1252B, this is a case that's made for 1252B5B. Okay. This is a case in which there is a substantial claim, a colorable claim. Remember, the government has never requested in this case. Is there a timeliness question in that 1252B case? Excuse me? Is there a potential timeliness question on the 1252 appeal? Timeliness. Well, I think there is a potential issue there involving exhaustion of administrative remedies, and that may be the issue. In fact, to be honest, that was my guess. When the court issued that order, I was guessing that somebody had seen that and thought that there might be a jurisdictional issue there having to do with exhaustion of state remedies. However, our position is that is not a problem. We think that the cases out of the Ninth Circuit and the Fifth Circuit are very sound in holding that one may bring a citizenship claim. You mean Ortega in the Seventh Circuit, right? No. You're talking about Rios Valenzuela from the Fifth? No. Those are 1503A cases. I'm thinking of the Theogenes case, and I think there's a case called Olmolo. I think it may be Olmolo. So these are 1252 cases? Those are 1252B cases, but those are exactly on this point. Those cases hold that a person with a citizenship claim may bring that claim under 1252B, and there is no requirement that that person exhaust administrative remedies in order to get that claim heard, and it comes straight out of that statute. The 1252B statute has a provision requiring exhaustion of administrative remedies, and that provision says the alien must exhaust administrative remedies. It does not apply to somebody who is claiming to be a citizen of the United States, and both the Ninth Circuit now, and I believe the Fifth Circuit, and there may be others. I'm sorry. I'm not quite sure of exactly what the state of the law is today on that issue, but certainly as far as I know, the Fifth Circuit and the Ninth Circuit have already answered that question, and I think given the actual language in the statute, that's got to be a correct decision so he can make that claim. But in any event, the 1252 claim is. . . Yes, we're asking you to apply the view, the reading of 1503 that was developed through Rios, Ortega, Henry in the Eastern District of New York, and the recent case that was just decided a couple of weeks ago, Guajardo. They all say that the way you read that statute is you first focus on the basis of the 1503A case, which in this case is an N-600 application, and you ask whether that application was made before or after the removal proceeding ended. And if it was brought after the removal proceeding ended, then you don't have the bar. You're not within the scope of the jurisdictional bar. Now, the Henry case, I will say, added one further element. The problem with those cases were that there was not a removal order. Excuse me? There were not removal orders in those cases. There certainly was a removal order in the Henry case, Judge. You're right that the very first time this occurred in Rios and in Ortega, there were not removal orders because those people had won, actually. Yeah, they'd won, but you have a removal order. We have a removal order. In light of the existence of the removal order. Yes. And I understand what you're arguing here. We appreciate your efforts on your client's behalf. But in light of this removal order, how do you get around 1503A-1? How do you get around the plain language of 1503A-1? We believe that that provision, as properly read, focuses on the basis of the 1503A case. In this instance, and in most of the cases you see, it's the N-600 application. That A-1, we believe, zeros in on the N-600 application and it asks, was that application made in the context of a removal proceeding? That becomes a factual issue. The early courts that spoke about this really trained it in terms of timing. They said, if that application occurred after the removal proceeding had ended, then it can't be part of that removal proceeding. Now, the Henry case did seem to add one further element, which was substance, in addition to time. The Henry court seemed to say, well, it would go along with you that you're not barred if you file that application after the removal proceeding ends and it is supported by evidence that was not used in the removal proceeding. So we think that on the strength of Henry and Guajardo, we can actually overcome the jurisdictional issue here. However, I will candidly say, as you must have picked up from the motions practice in these cases, we did believe that the 1252B route was the preferable route to go here, and so we are completely in favor if the court should see it that way as well. And as I say, if there is an issue, for example, Judge Fischer, if that administrative exhaustion issue is a concern to the court, we would be happy to brief it. We really do believe that that is virtually settled at this point. The statutory language could not be clearer, and the Ninth Circuit case and the Fifth Circuit case have found exactly that. There is no administrative exhaustion requirement for a citizenship claim under 1252. Okay, thank you, counsel. We'll hear you on the rebuttal. You're welcome. Thanks very much. May it please the Court. My name is Lauren Fossette, and I represent the appellees, excuse me, the United States government in this case. The district court correctly determined that Mr. Jackson's claim of U.S. citizenship clearly traced back to his removal proceedings. Can I just ask you a question? It's related to the merits, but I mean, if there's really a question as to whether this guy is a citizen, I mean, shouldn't government say, hey, let's give this guy some chance to prove that? Yes, Your Honor, and that is, in fact, what's happening in the parallel case where we have the 1252B-5 route. Is he ever going to get a hearing in that case? Hopefully. The motion to remand is pending before this Court, so depending on, I guess, what happens with this case. Is he joined? It's unopposed. It's essentially joined. Okay. Yes. So we're fully prepared to go forward because that is, in fact, during this case, that's the avenue for him to do so. So would it make sense for us to hold this in advance and send the 1252 back? It's an option. It's not necessary. The 1252B-5 case will go forward no matter what happens with this case. So in this case, the Court can properly decide that the exception that A-1 applies, this was not the proper way to bring the citizenship claim because it arose in a removal context, and if this case goes away, the other case still goes forward. And I think that was our reasoning in the various abeyance motions we had filed previously to go forward. So should we go the other way and hold this case and let the other case go forward? That's certainly an option. Either hold it or decide it. Honestly, if you decide there is jurisdiction and it goes back to the district court, then eventually there's a trial. We're going to have that trial teed up and ready in the other case. So you do the same thing. Whether we send it back as a 1503 or a 1252, the same thing is going to happen in the district court. Eventually the same thing would happen. But the government's position is it would be improper to send it under 1503. I understand that. But at the end of the day, it's the same trial regardless of how it's sent back. Yes, Your Honor. So one could argue that this would save judicial resources by not deciding this particular case and letting the other go forward. Yes, Your Honor. And that was, in fact, I think the position of both parties in our various motions that we filed over the summer. Are you going to raise exhaustion in the other case? No. And the reason is that citizenship is always, the court can look at that, that's always an issue, because obviously the government takes the citizenship claim very seriously. So while this case has been frustrating that the proper avenue has not been taken, in every filing that the government has made, we have pointed out, unfortunately, because Mr. Jackson was pro se, we pointed out in footnotes, please file a motion to reopen with the immigration judge, appeal it, you know, it doesn't matter that that was untimely because then appeal to the board, still denied as untimely. When you get to the circuit court, because it's a citizenship claim, there is no issue of exhaustion of the citizenship issue. The court has to know the review, and if there's an issue of material fact, they can remand under D-5, which is where we are in the other case. In this case, Mr. Jackson did raise his citizenship claim. He admits that he raised it in his 1992 proceeding, and he's continuing to assert the citizenship claim here to avoid the execution of the final order of removal. So it clearly falls in the exception of arose by reason of or arose in connection with his removal proceedings. How do you deal with that? I understand this might come under the heading of the fully litigated argument, but it does seem a little surprising that you raise this, whoever was handling it for the government just said no, and then everybody just left it. I mean, it doesn't really seem that maybe justice was done there. What do you think? I certainly understand that concern, and unfortunately, I don't know what happened, because Mr. Jackson didn't appeal, we have no transcript or record of what happened in those cases, and in any of his removals, he never appealed. So unfortunately, we just don't know. So I'm not disputing that. I just don't know what happened. But here, the proper avenue still always has been to just appeal and then bring the issue up. In those same proceedings, and then to the circuit court, and then if necessary, the remand for D-5 factual findings. The difference between Mr. Jackson's case and the Ortega case and the Rios case in the Seventh and Fifth Circuits are that, as Judge Fischer pointed out, both of those ended in no final order of removal. So this term terminated that we see in certain cases really means that the alien was successful in bringing their claim of citizenship or whatever it was that terminated their removal proceedings with no final order. Because of that fact, they couldn't go the 1252 B-5 route, because they had no final order to appeal to the board and then to the circuit court. Here, Mr. Jackson has a final order, it's always been appealable, and we have that finally in that position in the alternative case here. Petitioner points to the Henry case out of the Southern District of New York. The government just disagrees with that case, and in fact another panel, another judge in the Southern District of New York also expressed a disagreement with the Henry court in the Hedley-Umbler case. And pointed out that, again, when the issue arises in the context of removal, and there was a final order of removal, the appeal, the proper way to present the citizenship claim is, as Congress intended, through 1252. And we shouldn't allow Mr. Jackson to frustrate that specific avenue that Congress laid out and collaboratively attack his removal order through this 1503. You had mentioned that Judge Fisher had talked about Rios-Valenzuela, Ortega. Do you agree those cases were properly decided in terms of the factual nature of those cases, where they were never going to get to a removal order? Yes, Your Honor, because both of those aliens ended up in this sort of legal limbo, as the court mentioned, where there was no other avenue to bring their claim. However, in both those cases, the court noted that when the N-600 and the 1503 case had been brought forward while removal proceedings had been pending, they still needed the alien to go back and file some sort of a motion to reopen or additional N-600 after their removal proceedings terminated in no final order of removal, so that when they presented that 1503, it would not be barred by this exception. So even there, the court recognized the exact situation that Mr. Jackson's in, of where you brought this up in removal proceedings, you'd still be barred by the exception. And here it's very clear that we have a final order of removal, and the appropriate channel is through 1252, and then B-5, if appropriate. And with regard to the fully litigated, there is no requirement, there's no statutory requirement that the issue be fully litigated. It's the fact that it was mentioned, it can still go forward and be decided in de novo by the circuit court or on remand. So that concept that the petitioner is asserting isn't supported by the statute. And the fact that Mr. Jackson's issue may not have been fully flushed out, while I don't know exactly what happened, it still can go forward through the proper channel under 1252. Are there no further questions? Thank you, counsel. Thank you. Thank you. I just want to endorse the suggestion first raised by Judge Estrepo that maybe it makes sense to put this dispute back on the 1252B track rather than this one. And as Judge Fischer's comments revealed, candidly we acknowledge this is a challenging case in terms of getting over the jurisdictional hurdle. I'd like to take a shot at winning it, but I think that in some sense there is some wisdom to not putting this court to the task of actually resolving the jurisdictional problem in this particular case. And as I say, if we can satisfy you on whatever the concern was in 1252B, then moving over to that case and trying to resolve it completely there. Thanks. Thank you, counsel. Thank you, counsel. We'll take the case under advice. And we want to thank counsel for their excellent briefing and argument, and in particular thank Mr. Archie who is doing this case pro bono. We are very grateful for you doing that and your firm doing that and taking the time. It's our pleasure, Your Honor. And may I simply say that we had the benefit in the early stages of this case of working with Brian Rocco, who was a student at the University of Pennsylvania Law School. It's part of the court's program to get students involved. And although he has since graduated and gone to New Jersey. To New Jersey, I might add. He's working in the courts. And he's now clerking. He was not able to finish this case with us, but we certainly appreciated having him. Well, we appreciate his work and we appreciate your work. And if counsel are amenable, we'd like to disagree and thank you at sidebar, if that's all right. And we'll go off the record for a minute.